1          UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3       HONORABLE TERRY J. HATTER, JR., U.S. DISTRICT JUDGE

4

5   UNITED STATES OF AMERICA,          )
                                       )
6                                      )
                PLAINTIFF,             )   Case No.
7                                      )
           vs.                         )   CR 14-0209-TJH
8                                      )
    ISMAEL GUTIERREZ VILAVAZO,         )
9                                      )
                DEFENDANT.             )
10  _____)

11

12       REPORTER'S TRANSCRIPT OF SENTENCING PROCEEDINGS
              MONDAY, JULY 27, 2015
13                 10:00 A.M.
              LOS ANGELES, CALIFORNIA

14

15

16

17

18

19

20

21

22
    _____
23         ADELE C. FRAZIER, CSR 9690, CRR, RMR
           FEDERAL OFFICIAL COURT REPORTER
24              3470 TWELFTH STREET
           RIVERSIDE, CALIFORNIA 92501
25         ADELEFRAZIERCSR@GMAIL.COM


              UNITED STATES DISTRICT COURT

```
 1                    APPEARANCES OF COUNSEL:

 2

 3    FOR THE PLAINTIFF:

 4         STEPHANIE YONEKURA
           United States Attorney
 5         BY:  KIMBERLY D. JAIMEZ
                MICHAEL AZAT
 6         Assistant United States Attorneys
           3403 Tenth Street, Suite 200
 7         Riverside, California 92501

 8

 9    FOR THE DEFENDANT:

10         ANGEL J. NAVARRO
           Attorney at Law
11         714 West Olympic Boulevard, Suite 450
           Los Angeles, California 90015

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, JULY 27, 2015

 2                          10:00 A.M.

 3              THE COURTROOM DEPUTY:  Item number 5, criminal case

 4      14-209, United States of America vs. Ismael Gutierrez

 5      Vilavazo.

 6              The restraints on the hands need to be off.

 7              THE COURT:  Yes.

 8              If we can have the representation.

 9              THE COURTROOM DEPUTY:  Your appearance, please.

10              MS. JAIMEZ:  Good morning, your Honor.  Kimberly

11      Jaimez on behalf of the United States of America.

12              THE COURT:  Good morning.

13              MR. NAVARRO:  Good morning, your Honor.  Angel

14      Navarro for Mr. Vilavazo, who is to my left.

15              THE COURT:  Thank you.  The matter is here for

16      sentencing.  I take it you've had an opportunity to go over

17      the Presentence Report, as well as the position paper of the

18      Government, with your client?

19              MR. NAVARRO:  We have, your Honor.

20              THE COURT:  Very well.  Are you prepared to proceed

21      now?

22              MR. NAVARRO:  We are, your Honor.

23              THE COURT:  Go right ahead, Mr. Navarro.

24              MR. NAVARRO:  Your Honor, thank you.  You're very

25      familiar with the matter.
```

**UNITED STATES DISTRICT COURT**

1          THE COURT:  I am.

2          MR. NAVARRO:  We had the trial before you, and now

3    we're here for sentencing.  It's been a long time since I've

4    been before you on a criminal matter; that's because you

5    don't take cases, I understand.

6          THE COURT:  Back when they had the so-called

7    "guidelines."

8          MR. NAVARRO:  Yes, I remember them.  I think I

9    referred to them in my filings still.

10         THE COURT:  Yes, you did.

11         MR. NAVARRO:  The way I see this case, your Honor,

12   you can't give my client less than five years in prison, and

13   that's what I'm asking to you do.  I know --

14         THE COURT:  Well, let me, first of all, bring one

15   thing to your attention, and I'm sure it was just an

16   oversight on your part.  But -- your position papers were not

17   paginated, but if you look at what would be number 1, I take

18   it, where you start with an introduction and defendant's

19   position, et cetera, and I note that you say on the

20   defendant's position under Roman numeral II in the last

21   sentence in that paragraph, "In the case of Mr. Gutierrez

22   this Court has very limited discretion in determining the

23   appropriate sentence."  Really?  Why is that?

24         MR. NAVARRO:  I believe that's correct, your

25   Honor.

**UNITED STATES DISTRICT COURT**

1           THE COURT:  Why do I have very limited discretion?

2    I thought we were beyond the so-called "guidelines."

3           MR. NAVARRO:  What I mean is that you have limited

4    discretion because there's a mandatory minimum sentence.

5           THE COURT:  Yes.

6           MR. NAVARRO:  That's what I'm talking about.

7           THE COURT:  There's quite a difference between 60

8    and, what the probation officer is suggesting, 121 months.

9           MR. NAVARRO:  That's correct, your Honor.  But I

10   happen to believe even 60 months is a very long -- is a very

11   long time in prison for a drug offense.  And I'm not --

12          THE COURT:  Well, doesn't it depend on what kind of

13   drug offense we're talking about?

14          MR. NAVARRO:  It does, your Honor, but I'm a firm

15   believer that the mandatory minimums are themselves extremely

16   unfair.  They punish people of color disproportionately in my

17   23 years.  I don't have to tell you that.  I've represented

18   probably 100 defendants and 99 of them have been black or

19   Latino, and I think that speaks for itself.

20          And I don't prosecute cases.  I know the cases that

21   come before you and the cases I represented, both as a public

22   defender and a CJA counsel, and that's what I'm talking

23   about.  The numbers are overwhelming.  I think President

24   Obama spoke about it briefly recently.  He talked about

25   sentencing reform, real sentencing reform.  We've been

**UNITED STATES DISTRICT COURT**

```
 1    dealing with this issue of mandatory minimums way before I
 2    was even a public defender back in the '80's when you were on
 3    the bench.  That's my concern.
 4           My concern is that we have these mandatory minimums
 5    that are five, ten, 20, even life, and people get
 6    disproportionately long prison terms for drug offenses -- for
 7    nonviolent drug offenses.  I'm not here to lecture you or
 8    anybody else on the drug laws.  And I've seen the effects of
 9    drug use, drug selling.  I know what the effects are as well.
10    And I know people have to be punished, but my big concern is
11    that we are sentencing defendants, and myself included being
12    a part of the system, to five --
13           THE COURT:  You know, it's almost unfair to talk
14    about nonviolent -- some nonviolent drug offenses.  There's
15    some, perhaps, where you can make that claim, but when you
16    look at individuals who have been victimized by the use of
17    drugs, the distribution of these kinds of drugs does violence
18    to their lives.
19           MR. NAVARRO:  There's no question, your Honor, that
20    I -- I've seen in many of my cases the ultimate victims
21    are -- obviously, the users of the drugs -- but the families
22    who are left behind, the children who are left fatherless.  I
23    have a hearing before Judge Kennedy at 11:00 where my client
24    has a long history of drug use.  The effects are not only on
25    him, but on his kids.  He has an autistic child, et cetera.
```

**UNITED STATES DISTRICT COURT**

1    I'm aware of all that.

2            I think there has to be punishment.  And my concern

3    is that we have these laws that are created by Congress, and

4    we have individuals who get prosecuted.  And if it happened

5    to be methamphetamine or even crack cocaine, the penalties

6    seem to be disproportionately higher than other drugs.

7    That's what I'm talking about.

8            THE COURT:  Let's talk about this particular case,

9    though, and you point out that the codefendant got the case

10   dismissed.  Is it your position that the codefendant really

11   was more culpable than your client?

12           MR. NAVARRO:  Your Honor, I'm not going to make

13   that argument.  I think that there were charges on a

14   conspiracy because, according to the investigation that was

15   done by the Government, this was a two-defendant conspiracy

16   case.

17           THE COURT:  What were the roles of the two

18   individuals as far as you understand them?

19           MR. NAVARRO:  My understanding, your Honor -- I'm

20   only looking at it from the Government's perspective,

21   because, as you know, this case is probably going to go up on

22   appeal, so I have to be careful what I tell you.

23           THE COURT:  All right.

24           MR. NAVARRO:  From the Government's perspective,

25   the FBI, through the informant, contacted my client, and my

**UNITED STATES DISTRICT COURT**

1    client put them in contact with Mr. Huerta.  You heard the

2    calls.

3              THE COURT:  Yes.

4              MR. NAVARRO:  There were calls between the

5    informant and Mr. Huerta.  There were also calls between the

6    informant and my client.  And I don't know -- I don't think

7    the Government does either -- if, in fact, the narcotics that

8    were, ultimately, distributed to the Government informant

9    came from my client.  I can't make that -- I don't know that

10   that's the case.  It could well be.

11             THE COURT:  Did the Government ever prove that they

12   came from their client?

13             MR. NAVARRO:  I don't think so.  I believe the

14   narcotics came from Mr. Huerta.  Where Mr. Huerta got those

15   drugs from, I do not know.  Whether the claim can be made,

16   well, it's all one drug organization, that's an argument that

17   can be made, but I found it ironic that the person who

18   actually delivered and negotiated the price of the narcotics

19   is not here.

20             I understand there were problems with the

21   Government's case.  And this case the Government -- we

22   were -- you know, we were trying to get it resolved.  It

23   didn't get resolved, and we ended up in trial.  And we are

24   here now before you, your Honor.  But I do believe that a

25   ten-year prison term is way too long for someone who's 30

**UNITED STATES DISTRICT COURT**

1    years old, who has a relatively minor criminal history.

2              The probation officer indicates in their letter to

3    your Honor that my client was deported and came back.  That's

4    actually incorrect.  He -- he was arrested in Tennessee.  He

5    was prosecuted for illegal entry there.  He was given time

6    served, and then he was brought here.  This is not a --

7    you've handled a number of illegal re-entry cases, just like

8    I have.  This is not a case where my client, the defendant,

9    was deported and comes back.  He was never deported.  He was

10   prosecuted for illegal entry, and then transported to our

11   district to face these charges, your Honor.

12             And my client will respectfully accept whatever

13   decision you decide today.  And he may well appeal this case;

14   I can't speak for him on that issue.

15             THE COURT:  I understand.

16             MR. NAVARRO:  And that would be our position, your

17   Honor.

18             THE COURT:  Well, regardless of what the sentence

19   is going to be, he more than likely will be deported.  Is

20   that right?

21             MR. NAVARRO:  I believe that's correct.  My client

22   does not have status.

23             THE COURT:  He came here with his mother when he

24   was quite young.  What was he under five, wasn't he?

25             MR. NAVARRO:  Correct.

**UNITED STATES DISTRICT COURT**

```
 1              THE COURT:  Does he have family in Mexico?  I know
 2    his father's passed away.
 3              MR. NAVARRO:  Your Honor, my client has family in
 4    Mexico.  Obviously, his mother, who's, I believe, in her 60's
 5    now, she's here, and she's been here her whole life.  I've
 6    met her.  She's a wonderful lady.  She has no idea about this
 7    case aside from what we've talked about.  She's a loving
 8    mother, as most mothers are, but she is probably going to
 9    have to make a decision about whether she goes down to Mexico
10    with her son, because he will be sent to Mexico, your Honor.
11    That's pretty clear to me.
12              THE COURT:  All right.  Anything else at this
13    point?
14              MR. NAVARRO:  No, your Honor, not from me.
15              THE COURT:  All right.  Let's hear from the
16    Government.  Ms. Jaimez.
17              MS. JAIMEZ:  Your Honor, the Government would
18    submit that the 121-month sentence -- it's a low-end
19    guideline sentence, and it is calibrated to the history and
20    the characteristics of this defendant.
21              THE COURT:  Isn't it really calibrated more to the
22    size of the methamphetamine?
23              MS. JAIMEZ:  Well, your Honor, that's what the
24    initial trigger was, but when we go back and look at what was
25    proven at trial, what we heard from the witnesses and
```

**UNITED STATES DISTRICT COURT**

```
 1    particularly the cooperating witness, the CI, we know, your
 2    Honor, that this particular defendant was involved in
 3    significant drug trafficking.  This was not a low-level
 4    dealer or a user who just sold to support his habit.  This
 5    was someone who was involved in drug trafficking, and
 6    actually brokered deals for other individuals.  Therefore,
 7    there isn't this concern where there might be in other cases
 8    of drug trafficking convictions of people of color of
 9    low-level offenses where it would seem like the 121 months
10    would be unjust.
11         Here, with this particular defendant, that does not
12    seem to be the case.  He brokered this deal between the
13    defendant and the CI.  And as the CI said on the stand, he
14    understood that this defendant routinely moved large
15    amounts.
16         THE COURT:  But this is the same CI who couldn't
17    identify the individual that was actually being given the
18    money for drugs and all.  I mean, what am I supposed to
19    understand from that?  I mean, here we have someone who is
20    going to be deported.  Why should citizens of this country
21    pay out more than 30-, $35,000 a year to maintain him for ten
22    years before deporting him?
23         MS. JAIMEZ:  Well, first, your Honor, with respect
24    to the CI, one of the things that was noted at the trial was
25    that with respect to this defendant --
```

 1          THE COURT:  Yes.

 2          MS. JAIMEZ:  -- the CI had years of knowing him,

 3   spoke with him on a regular basis, and, therefore, was

 4   confident about who the defendant was and what he was doing.

 5          And that's contrasted in totality with the CI's

 6   relationship with the defendant's nephew.  He had only met

 7   the defendant's nephew on one occasion.  He had only spoken

 8   with him on the phone one or two times beforehand and saw him

 9   in a dark car in a period of less than ten minutes.  So,

10   really, there is no good comparison between his experience

11   with the nephew and this particular defendant.  That's one

12   point.

13          The other point is that at the end of the day, your

14   Honor, we have these guidelines, and these guidelines are

15   here for a reason.  They help us ensure that there is

16   consistency between the sentencing of similarly situated

17   defendants.

18          THE COURT:  Well, they're meant to do that.

19          MS. JAIMEZ:  That's what they mean to do, your

20   Honor.

21          And here to the extent the Court imposes a

22   within-the-guidelines range, it helps ensure there isn't a

23   disparity between these defendants who are similarly

24   situated.  And 121 months would be the low end for an

25   individual who is engaged or was engaged in routine drug

**UNITED STATES DISTRICT COURT**

```
 1    trafficking, your Honor.
 2            THE COURT:  All right.  Anything further,
 3    Mr. Navarro, before I hear directly from your client?
 4            MR. NAVARRO:  No, your Honor, not from me.
 5            THE COURT:  All right.
 6            MR. NAVARRO:  Your Honor, could I have a second
 7    with my client?
 8            THE COURT:  Certainly.  Take as much time as you
 9    need.
10            MR. NAVARRO:  Thank you, your Honor.
11            THE COURT:  All right.  Go ahead, Mr. Vilavazo.
12            THE DEFENDANT:  Yes, your Honor.
13            MR. NAVARRO:  Your Honor, my client, as you can
14    imagine, has no real history of public speaking.  So --
15            THE COURT:  I understand that.
16            MR. NAVARRO:  I've asked him that he can answer
17    questions from you if you want to have a dialogue with him.
18    He doesn't have a prepared statement.  He's very much
19    concerned about protecting his appellate rights as well, your
20    Honor.
21            THE COURT:  All right.  Just tell me what you
22    expect to do with the rest of your life.
23            THE DEFENDANT:  Get out and work.  I'm trying not
24    to be deported.  I've been here all my life.
25            THE COURT:  There isn't much I can do about that.
```

**UNITED STATES DISTRICT COURT**

```
 1    But I'm sure you'll get immigration counsel to help you.  But
 2    when you say "work," you were working before.  Some of it was
 3    illegal, though.  More cock fights?
 4              THE DEFENDANT:  I wasn't involved in cock fighting,
 5    your Honor.  What I was doing, I was buying stock, livestock
 6    and reselling it, which they think it's cock fighting because
 7    I'm selling the birds for a certain specific thing, but I
 8    wasn't fighting them.  I wasn't doing it.  I would just going
 9    out to Alabama, Louisiana, buying them and reselling them all
10    over the place.
11              THE COURT:  You mean selling them to others --
12              THE DEFENDANT:  Yeah.
13              THE COURT:  -- who might be involved in that?
14              THE DEFENDANT:  Yeah.  But I wasn't doing it.
15              THE COURT:  What sort of work do you see yourself
16    doing if you're able to remain here in the United States?
17              THE DEFENDANT:  Well, I got computers training.  I
18    got work -- warehouse experience, construction experience,
19    other things.
20              THE COURT:  Well, I don't want to interfere in your
21    possible appeal in any way to ask you something that you
22    would not want to divulge to me at this point, but you
23    understand that a jury of your peers found you guilty beyond
24    a reasonable doubt?
25              THE DEFENDANT:  Yes, your Honor.
```

**UNITED STATES DISTRICT COURT**

1          THE COURT:  And I have the responsibility of trying
2     to protect society from actions such as you were found guilty
3     of performing.
4          THE DEFENDANT:  Yes, your Honor.
5          THE COURT:  And at the same time, hopefully,
6     finding something that's redeemable in you that will help you
7     so that you no longer violate the law, whether you're here in
8     the United States or in Mexico.
9          Now, the sentencing guidelines sometimes are
10    helpful; other times they are not.  I've been sentencing
11    people for almost 40 years, state court, and some 36 years in
12    this court, and it hasn't gotten easier.  So I would have
13    welcomed guidelines that would have aided me in sentencing.
14    I would welcome them now.  And, indeed, I have to see that
15    they're calculated properly by the probation officer who
16    makes, then, a recommendation.  And in that regard I find
17    that they are properly calculated.
18         And I note too, for the record, there's been no
19    objection to the Presentence Report, either by the defense or
20    the Government.
21         The amount of the drugs, certainly, is the driving
22    factor here.  There's no doubt about that.  And while I find
23    that under the guidelines they've been calculated properly
24    with regard to the criminal history category, I, frankly,
25    think that the criminal history's overstated.

**UNITED STATES DISTRICT COURT**

```
 1              There's the one matter that bothers me most and
 2    that was you had a loaded weapon in a car one time.
 3              THE DEFENDANT:  At the time, your Honor --
 4              THE COURT:  Yes.  Tell me about it.
 5              THE DEFENDANT:  I was working as a security
 6    guard.
 7              THE COURT:  I see.
 8              THE DEFENDANT:  I was trying to get the proper
 9    paperwork and the license for the gun.  I was on my way to
10    work, which I told the officer, I have a gun in the car.
11              THE COURT:  Yeah.
12              THE DEFENDANT:  And he said, Okay.  Well, I've got
13    to take you to jail.  I told him, Okay.
14              THE COURT:  And then, of course, you have had a
15    driving without the proper license.  These are things, sadly,
16    that a lot of people have, should not, but they do have those
17    offenses on their records.  I didn't see a DUI there or
18    anything of that nature.  I've not seen anything of violence.
19              So I think that the criminal history is overstated
20    under the guidelines, not the calculation of the guidelines
21    by the probation officer.  And that's, of course, one of the
22    problems with the guidelines throughout.  That's just one
23    example of it.  The fact that it will take juvenile
24    adjudications and treat them the same way they do for adults,
25    I mean, that doesn't give me any help at all in sentencing.
```

**UNITED STATES DISTRICT COURT**

```
 1    In fact, it's just the opposite when those kinds of things
 2    occur.
 3              So the guidelines help in limited situations, and
 4    they're a starting point, and I start with them, as I must,
 5    under the Ninth Circuit law.
 6              THE DEFENDANT:  Your Honor.
 7              THE COURT:  Yes.
 8              THE DEFENDANT:  When I got sentenced --
 9              THE COURT:  Yes.
10              THE DEFENDANT:  -- they sentenced me on the first
11    level of the guidelines.  Why would they sentence me over
12    there?  And I haven't been out since that time.
13              THE COURT:  What do you mean the first level?
14              THE DEFENDANT:  A criminal history number 1.
15              THE COURT:  Well, they have you under number 3 for
16    the criminal history category.
17              THE DEFENDANT:  Yeah, here.  But in Tennessee I was
18    sentenced in criminal history number 1.
19              THE COURT:  That was probably a state matter.
20              THE DEFENDANT:  It was --
21              THE COURT:  Oh, you mean, when they talked about
22    your returning to --
23              THE DEFENDANT:  Yeah.
24              THE COURT:  -- the United States?
25              I can't speak for that district and that
```

**UNITED STATES DISTRICT COURT**

1    sentencing.  I'm not sure that if I were sentencing you, that

2    I would sentence you under number 1.  You've had these

3    violations; there's no doubt about it.  I just don't think

4    they rise to the level of 3.  But the Sentencing Commission

5    seems to think so.  They have a right to think so.  I have a

6    right to disagree with them, fortunately, now after some 20

7    years almost of not being able to disagree.

8          Now, I can't tell you what happened there, but you

9    were fortunate that they did sentence you under the first

10   level.

11         But with any regard, I do think that ten years is

12   excessive.  If you'd had some other conviction, then I have

13   to believe that you would not have been able to engage in

14   this activity if you had not been involved before, but,

15   nevertheless, not been proven.  And, of course, we have a CI,

16   of course, who, interestingly, has never been involved in

17   drugs but knows all you drug dealers.  I find that, sort of,

18   incredulous, but that's what happens.  It wasn't for me to

19   make the determination.  If it had been a court trial, I

20   might have come out somewhat differently than did the jury;

21   although I think that there was certainly enough evidence

22   that you were involved, I mean, apart from the CI.

23         But what we have here, really, is a delicate

24   balancing act that has to be done to try to ensure the safety

25   of the community, at the same time to see if there aren't

1    some redeeming graces that you possess that we can help you

2    to ensure that you use them and use them lawfully in the

3    future, and I don't think it would take ten years to do that.

4            You never had a significant sentence of any kind.

5    I'm not sure if that's good or bad.  Perhaps if you'd had

6    more than a slap on the wrist previously, you wouldn't be

7    here now.  But I don't know that.  But I do know that it is

8    not going to require ten years of, really, your just living

9    off the taxpayers of this country and then being deported.

10           Well, I've considered the Sentencing Factors in

11   United States Code Section 3553(a), and the Report and

12   Recommendation of the probation officer, the position papers

13   of both the Government and the defendant, and having done so,

14   I'm going to order that you, first of all, pay to the United

15   States a special assessment of $700, that's $100 on each of

16   the seven counts for which you were found guilty.  On the

17   eighth count you were found not guilty.  And this is due

18   immediately.  Any unpaid balance shall be due during the

19   period of imprisonment at the rate of not less than $25 per

20   quarter and pursuant to the Bureau of Prisons Inmate

21   Financial Responsibility Program.

22           All fines will be waived as I find that you do not

23   have the ability to pay, and it's not likely that you would

24   become able to pay any fine.

25           Pursuant to the Sentencing Reform Act of 1984, it's

**UNITED STATES DISTRICT COURT**

1   the judgment of the Court that you be committed on Counts 1,

2   2, 3, 4, 5 and 6, and 8 of this Indictment to the custody of

3   the Bureau of Prisons for a term -- and it appears to me that

4   it will be more than the mandatory minimum.  That's why I

5   just don't get there, even though mandatory minimums can be

6   harsh in and of themselves, but the factors of this case call

7   for something more than that.  So you will be sentenced to

8   the custody of the Attorney General or the Bureau of Prisons

9   for a term of 78 months.

10          And this term will consist of 78 months on each of

11  Counts 1 and 2 of the Indictment and 48 months on Counts 3,

12  4, 5, 6 and 8.  All of these terms are to be served

13  concurrently.

14          Upon release from imprisonment, you shall be placed

15  on supervised release for a term of five years.  And this

16  term will consist of five years on each of Counts 1 and 2 and

17  one year on each of Counts 3, 4, 5, 6 and 8 of the

18  indictment.  And, again, all such terms to run concurrently

19  under the following terms and conditions -- I want you to

20  listen carefully because if you violate any of the terms and

21  conditions, you'll come back before me, and you'll be

22  re-sentenced on those violations:

23          You shall comply with the rules and regulations of

24  the United States Probation Office, including General Order

25  number 05-02, and that will be explained to you fully by the

**UNITED STATES DISTRICT COURT**

1    probation officer;

2           Secondly, you shall not commit any violation of

3    local, state, or federal law or ordinances;

4           3, You shall refrain from any unlawful use of any

5    controlled substance.  You indicate you do not use.

6    Nevertheless, you shall submit to one drug test within 15

7    days of release from imprisonment, and at least two periodic

8    tests thereafter, not to exceed eight per month as directed

9    by the probation officer;

10          4, During the period of community supervision, you

11   shall pay the special assessment in accordance to this

12   judgment's orders pertaining to such payment.  That's the

13   $700;

14          Fifth, You shall comply with the immigration rules

15   and regulations of the United States.  And if you are

16   deported from this country, either voluntarily or

17   unvoluntarily, you shall not re-enter the United States

18   illegally.

19          You are not required, however, to report to the

20   probation office while residing outside of the United States;

21   however, within 72 hours of release from any custody or any

22   re-entry into the United States during the period of

23   court-ordered supervision you shall report for instructions

24   to the United States Probation Office located in this

25   building, United States Courthouse, 312 North Spring Street,

**UNITED STATES DISTRICT COURT**

1    Room 600, Los Angeles, California, 90012;

2              6, You shall not obtain or possess any driver's

3    license, social security number, birth certificate, passport,

4    or any other form of identification in any name other than

5    your true legal name, nor shall you use for any purpose nor

6    in any manner any name other than your true legal name or

7    names without the prior approval of the probation officer;

8              And, finally, you shall cooperate in the collection

9    of a DNA sample.

10             A justification is that which has been stated on

11   the record that contain within the various elements of 18

12   United States Code Section 3553(a), the moving papers, and

13   arguments of the parties here.

14             You have ten days from the filing of the judgment

15   in this matter to notice an appeal to the Ninth Circuit Court

16   of Appeals.  If you cannot afford a lawyer for purposes of

17   appeal, one will be appointed to represent you just as you've

18   had the good fortune of having Mr. Navarro representing you

19   at the trial level.

20             Good luck to you, sir, but it requires more than

21   luck.  You have to work hard to give back to society from

22   which you've taken.  You're a very young man.  I think you

23   can do that.  I don't know what the outcome of the

24   deportation proceedings will be.  I wish you luck in that.

25   For all intents and purposes, you're really an American, but

**UNITED STATES DISTRICT COURT**

1    you'll have to deal with that on your own.  Good luck to

2    you.

3              THE DEFENDANT:  Thank you, your Honor.

4              THE COURT:  Thank you.

5              MR. NAVARRO:  Your Honor.  I'm sorry, your Honor.

6    We do have one final request, your Honor.  As we discussed,

7    my client's mother resides here in North Hollywood in

8    Southern California.

9              THE COURT:  Yes.

10             MR. NAVARRO:  If the Court can make a

11   recommendation for housing in Southern California, it would

12   be greatly --

13             THE COURT:  I'll certainly make that

14   recommendation, but as you know well, Mr. Navarro, the system

15   is vastly overcrowded, and the recommendations only go so

16   far.

17             MR. NAVARRO:  Thank you, your Honor.

18             THE COURT:  I'll make that recommendation.

19             MR. NAVARRO:  Thank you again.

20             THE COURT:  Thank you all.

21         Thank you, Mr. Azat.  I know you had another matter.

22             MR. AZAT:  Thank you.  I apologize for that.

23             THE COURT:  You don't have to apologize for that at

24   all.

25                   (Proceedings Concluded.)

**UNITED STATES DISTRICT COURT**

UNITED STATES DISTRICT COURT

```
 1                CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4          I, ADELE C. FRAZIER, FEDERAL OFFICIAL REALTIME

 5   COURT REPORTER, IN AND FOR THE UNTIED STATES DISTRICT COURT

 6   FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY

 7   THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE

 8   THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

 9   STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

10   ABOVE-ENTITLED MATTER AND THAT THE TRANSCIPT PAGE FORMAT IS

11   IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL

12   CONFERENCE OF THE UNITED STATES.

13

14               DATED THIS 7th DAY OF OCTOBER, 2015

15

16

17

18          /S/ ADELE C. FRAZIER

19          _____

20          ADELE C. FRAZIER, CSR No. 9690, CRR, RMR

21          FEDERAL OFFICIAL COURT REPORTER

22

23

24

25
```

**UNITED STATES DISTRICT COURT**