```
 1                  UNITED STATES DISTRICT COURT

 2       CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3         HONORABLE TERRY J. HATTER, U.S. DISTRICT JUDGE

 4

 5   UNITED STATES OF AMERICA,    )
                                  )
 6                  PLAINTIFF,    )
                                  )
 7           vs.                  ) No. CR 14-0209-TJH
                                  )
 8   ISMAEL GUTIERREZ VILAVAZO,   )
                                  )
 9                  DEFENDANT.    )
     _____)
10

11

12           REPORTER'S TRANSCRIPT OF PROCEEDINGS

13               FRIDAY, NOVEMBER 21, 2014

14                     10:03 A.M.

15                LOS ANGELES, CALIFORNIA
```

**CHIA MEI JUI, CSR 3287, CRR, FCRR**
FEDERAL OFFICIAL COURT REPORTER
255 EAST TEMPLE STREET, ROOM 181-C
LOS ANGELES, CALIFORNIA 90012
cmjui.csr@gmail.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1  APPEARANCES OF COUNSEL:

 2  FOR THE PLAINTIFF:

 3       OFFICE OF THE UNITED STATES ATTORNEY
         BY: ANGELA L. SCOTT
 4           MICHAEL O. AZAT
         ASSISTANT U.S. ATTORNEYS
 5       312 NORTH SPRING STREET
         14TH FLOOR
 6       LOS ANGELES, CALIFORNIA 90012
         213-894-8845
 7


 8
    FOR THE DEFENDANT:
 9
         ANGEL NAVARRO LAW OFFICE
10       BY:  ANGEL NAVARRO, ATTORNEY AT LAW
         714 WEST OLYMPIC BOULEVARD, SUITE 450
11       LOS ANGELES, CALIFORNIA 90015
         (213) 744-0216
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1            LOS ANGELES, CALIFORNIA; FRIDAY, NOVEMBER 21, 2014

 2                              10:03 A.M.

 3                                - - -

 4            THE CLERK:  Criminal Case 14-0209, United States

 5   of America versus Ismael Gutierrez.

 6            Counsel, state your appearances at the lectern.

 7            MS. SCOTT:  Angela Scott for the United States.

 8   And here with me at counsel table is Assistant United States

 9   Attorney Michael Azat.

10            THE COURT:  All right.  Thank you.

11            MR. NAVARRO:  Good morning, Your Honor.  Angel

12   Navarro present with Mr. Gutierrez Vilavazo.

13            THE COURT:  Thank you, Mr. Navarro.

14            Did you wish to be heard?

15            MR. NAVARRO:  Yes, Your Honor.  Thank you very

16   much.  And, Your Honor, before -- after I am heard I will --

17   I have a housekeeping matter to bring up with the Court with

18   regard to the trial date.

19            I understand that the Court is inclined to impanel

20   the jury and then put the matter over.  I would actually

21   suggest -- I have spoken with Government counsel -- to a

22   two-week continuance to December 9th.

23            There is an issue that I need to further research

24   and litigate in this case, Your Honor, which I am happy to

25   bring up later on.
```

```
 1              THE COURT:  Don't we have a trial already set in
 2   December?
 3              THE CLERK:  December 9th, criminal trial set.
 4              MR. NAVARRO:  Your Honor, I also have discussed
 5   potentially the 16th.  And I don't know if -- I believe that
 6   may be cutting it close for one of the prosecutor's plans
 7   for vacation.
 8              THE COURT:  Please repeat your representation when
 9   you speak, please.  Go ahead.
10              MR. AZAT:  Michael Azat for the United States.
11              The only issue would be that I am supposed to fly
12   out of town on the 20th.  So if this trial does, in fact, go
13   long, it may be an issue.  However, I can always change
14   those plans.  I just wanted to bring that to your attention.
15              THE COURT:  All right.  Of course I can't
16   interfere with what's going on.  But since there is some
17   telephone counts here, I imagine, there would be some
18   negotiations with the Government, have you not, Mr. Navarro?
19              MR. NAVARRO:  Your Honor, there has been an offer,
20   actually, for a telephone count, which has been outstanding
21   for a period of time.
22              THE COURT:  Don't need to go any farther.
23              MR. NAVARRO:  But there have been negotiations.
24              THE COURT:  No reason why you can't continue them.
25              MR. NAVARRO:  I'm sorry?
```

```
 1              THE COURT:  No reason why you can't continue those
 2   discussions.
 3              MR. NAVARRO:  Of course, Your Honor.
 4              Your Honor, when I -- when we were here before you
 5   the last time earlier in the month, the issue was brought up
 6   with regard to a second confidential source.  And the
 7   Government had provided me with some limited discovery with
 8   regard to interviews of Confidential Source Number 2.
 9              And Confidential Source Number 2 had made -- had
10   indicated to the Government that there were some issues with
11   Confidential Source 1 who was the informant in this case.
12              I wanted to explore those issues.  And when I
13   filed my application with Your Honor, I was purposely vague.
14   I did not include specifics.
15              If I wanted to do that, I would have done so under
16   seal or in camera.  But since then, Your Honor, I have
17   provided some of this information to Government counsel, and
18   I want to provide it to Your Honor as well.  I think it's
19   important.
20              One of the areas that I would like to explore with
21   Confidential Source 2 has to do with an incident involving,
22   from the defense perspective, Confidential Source 2,
23   Confidential Source 1 and two other individuals who are --
24   who all know each other.
25              And the information that we have is that
```

```
 1   Confidential Source 2, Confidential Source 1, Nestor
 2   Hernandez, who later on died and an individual known, I
 3   think, as Looney -- I have his name, but I can't remember
 4   right now -- that these four individuals were involved in a
 5   situation where they were threatening a fifth person with --
 6   also with -- one of them had a weapon.  And the information
 7   that we have is that Confidential Source 1 was involved in
 8   this.
 9            And, again, this is something that we became aware
10   through our investigation and I wanted to explore with
11   Confidential Source 2.
12            That's one example.  I provided this to
13   Miss Scott.  I also provided information to the Government
14   that we believe Confidential Source 1 may have been engaged
15   in insurance fraud, automotive insurance fraud.
16            And I am still trying to gather information on
17   that.  And we believe Confidential Source 2 has information
18   on this as well.
19            I have also since learned that the same
20   Confidential Source 1 may have been involved in what is
21   called "cargo theft," which is a theft of cargo from a
22   trailer truck and then making false insurance claims on it.
23            These are issues that I am trying to explore, and
24   I believe they go to the credibility of the confidential
25   source in this case.
```

1               And that it is for those reasons, Your Honor, that
2    I wanted to interview Confidential Source 2.  I also
3    indicated in my application to the Court -- I am happy to do
4    it, to file in camera for whatever the interview may be --
5    we're happy to comply with whatever requirements the Court
6    places on myself and my investigator in order to explore
7    these issues, Your Honor.
8               THE COURT:  You have seen the Government's
9    response.  Evidently, Source Number 2 is declining to be
10   interviewed.
11              MR. NAVARRO:  That's what the Government has
12   stated in their papers, Your Honor.  That's correct.
13              THE COURT:  Well, do you think otherwise?
14              MR. NAVARRO:  Well, again, Your Honor, I don't
15   want to belabor the point, but there have been many
16   instances where I have talked to witnesses, whether it's a
17   bank teller or somebody else, and I'm told --
18              THE COURT:  Now, you are telling me about bank
19   tellers.  We're talking about drug sources, confidential
20   sources involved in dealing drugs.
21              MR. NAVARRO:  That's correct, Your Honor.  I
22   didn't create this mess.  I am just trying to make my way
23   through it, for lack of a better term.
24              In terms of --
25              THE COURT:  But you have been around the block.  I

1  mean, you have been here a number of years, and you know
2  good and well the Government has confidential source and
3  have the agent speak to them.  We have the affidavit from
4  the agent.  And, of course, they always say "I decline."
5  That's the case here.  What makes you think it's going to
6  change?
7          MR. NAVARRO:  It may not change, Your Honor.  But
8  I did bring to the Government's attention some of this
9  information, and I indicated to Government's counsel perhaps
10 the case agent could interview Confidential Source 2 with
11 regard to these allegations.  And I don't know --
12         THE COURT:  Let's talk about that.  Let's talk
13 about what is possible.  It appears to me it is impossible
14 to have you interview him, doesn't choose to be interviewed,
15 and that's usually the case.  It's true in this case, it
16 appears.
17         Why don't you at least suggest that -- some
18 questions along the lines that you have there -- although
19 I'm not sure about materiality of them, other things, but
20 that's your decision.
21         But if you have questions, you can give them to
22 the Government to then have the agent and someone else ask
23 him these questions.
24         And, frankly, it appears to me that you have the
25 right to -- if he declines to testify, at least have an

1  independent polygraph while he's answering these questions.
2           MR. NAVARRO:  That's a good suggestion,
3  Your Honor.  I am happy to -- I was kind of doing that ahead
4  of time.  I provided some of the information.  As I told the
5  Government counsel, I don't engage in fishing expeditions.
6  I'm not a fisherman.  I don't do that.
7           But I do want to -- you know, at the same time, I
8  am conflicted because I don't want to show my cards, but I'm
9  also trying to help my client the best I can.
10          And I am happy to comply with Your Honor's
11 suggestion.  I will do that, Your Honor.  And I will give us
12 specific information as I have with regard to this issue to
13 the Government today, and I, hopefully --
14          THE COURT:  They may reject it, but let's see
15 where we go from there.
16          MR. NAVARRO:  That seems fair, Your Honor.
17          THE COURT:  All right.  Miss Scott, do you wish to
18 be heard?
19          MS. SCOTT:  Yes, Your Honor.  I don't want to
20 reiterate what I have already stated in my briefs, but with
21 regard to what the Government intends to do regarding CS 1
22 and CS 2, certainly the Government will continue to inquire
23 about these matters with regard to CS 1.
24          Certainly Mr. Navarro is a very talented attorney
25 and he could -- and likely will cross CS 1 on these issues.

```
 1   And I think that's the answer to this dilemma, which is
 2   cross-examination.
 3           THE COURT:  I'm not sure it's the complete answer
 4   at all.  The better answer certainly would be to have CS 2
 5   here as well.
 6           And I can't believe from the very beginning of
 7   looking at this that the Government would believe that CS 1
 8   has never dealt in narcotics.  It just didn't make sense.
 9           You know, I wouldn't know where to go do it.  I
10   don't think any of my law clerks or anyone else would know
11   unless they were actually dealing, and I think you know that
12   as well.
13           MS. SCOTT:  And I think that is a very valid
14   point, Your Honor.  The way in which the Government came to
15   CS 1 in this case is unique in that it was through a murder
16   investigation.  And CS 1 had a separate motive that, again,
17   I am not used to seeing.  And that is why, in this specific
18   instance, it was somewhat more believable.
19           However, of course, I, as a narcotics prosecutor,
20   have always questioned whether or not CS 1 dealt in drugs.
21   And certainly it would be devastating to our case as we
22   continue to interview CS 1 if he admits that he, yes, indeed
23   did deal in drugs.
24           But that is information that we would certainly
25   turn over immediately to the defense, and the defense would
```

```
 1   be able to cross-examine him on that.
 2            And I believe that certainly Mr. Navarro's point
 3   could be made in that cross-examination without having to
 4   endanger CS 2 and --
 5            THE COURT:  You know, CS 2 doesn't have to be
 6   endangered.  We've had trials here where people have been in
 7   disguise.  There are national security matters and others
 8   so -- much more concerned about safety in some of those
 9   cases than in this.  So that's just not a response that you
10   are concerned about his safety.  Safety can be taken care
11   of.
12            MS. SCOTT:  That is -- I'm comforted to hear that
13   because that is a big concern with regard to CS 2.
14            But, additionally, just in light of the rules of
15   evidence, whether or not the Court would permit what seems
16   to me to be a mini trial on CS 1's character through CS 2,
17   the Government would be opposed to that.  And I do believe
18   it is a collateral matter and one that's not preferred.
19            THE COURT:  All right.  Anything further,
20   Mr. Navarro?
21            MR. NAVARRO:  Again, Your Honor, I would like to
22   apologize.  This was not in my motion.  I am basing this on
23   reviewing -- which I did not introduce as part of an
24   exhibit, the requirement --
25            THE COURT:  All right.
```

```
 1              MR. NAVARRO:  Your Honor the source of this motion
 2   came from a discovery pages 1,765 to 1,772, eight pages of
 3   what appear to be four separate interviews, I believe three
 4   in person, one telephonic, of CS 2.
 5              During those interviews, CS 2 indicated a number
 6   of things about CS 1, including that CS 1 was involved in
 7   the theft of narcotics for my client.
 8              And, again, that may be a whole other reason as to
 9   why he is involved here.  He may want to put my client away,
10   doesn't have to pay a drug debt.  It's a problem for me as
11   well.  It may not help the case, but it may explain CS 1's
12   motive.  That's something else that I wanted to bring up,
13   Your Honor.
14              And again, Your Honor, I think that your
15   recommendation is a sound recommendation, and I am happy to
16   comply with that recommendation.
17              THE COURT:  It's not really a recommendation.
18   It's just a thought of mine.  That's all.
19              MR. NAVARRO:  Very well, Your Honor.
20              THE COURT:  Let's talk about this trial date set
21   for 11/25.  Can we do it on the 2nd of December?  Rather
22   than bringing the jury in Thanksgiving week, just have them
23   come --
24              THE CLERK:  Yes.  We can start on the 2nd of
25   December.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1     THE COURT:  All right.  I take it that the
2 Government will be available as well, 2nd of December.
3     MR. AZAT:  Yes, Your Honor.  Thank you, Your
4 Honor.
5     THE COURT:  All right.
6     MR. NAVARRO:  Your Honor, that will work for us as
7 well.  Thank you.  Your Honor, I wanted to bring one issue
8 to your attention, and I am going to have to file the motion
9 in limine with regard to this issue.
10     Yesterday the Government filed their trial
11 memorandum in this case.
12     THE COURT:  I haven't seen it yet.
13     MR. NAVARRO:  My assumption -- and it was
14 incorrect -- was that the Government was going to proceed
15 against my client and my client only.
16     Now it appears from the trial memorandum that the
17 Government is going to proceed in this case and introduce
18 evidence of the dealings between the informant and Defendant
19 Number 2 who has since been dismissed by the same
20 Government.
21     And the Government is trying to introduce all of
22 that evidence under co-conspirator statements.  And I
23 believe it's a challenge for both sides.  And I want to
24 litigate this issue, Your Honor.
25     I have looked at the case law on this issue of

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   confrontation clause and hearsay exceptions, but we have a
 2   situation here which is a little different.
 3           Every case that I have seen involves situations
 4   where there are co-conspirator statements that come in, and
 5   those co-conspirators are part of the case.  They've either
 6   pled guilty, they're cooperating, or something to that
 7   effect.
 8           We don't have that here.  We have a situation
 9   where the co-conspirator has been dismissed by the same
10   Government because the informant has misidentified him
11   twice.
12           Now the Government is proceeding under the
13   original theory that the dismissed
14   co-conspirator/co-defendant, is almost here.  That's a
15   problem that I am trying to put my hands around, and I would
16   like to file another motion and litigate this issue,
17   Your Honor, before you.
18           THE COURT:  Are you ready to do it Monday?
19           MR. NAVARRO:  I could do it this Monday.  I could
20   file something over -- I could file it today, Your Honor.
21           THE COURT:  All right.
22           MR. NAVARRO:  Maybe tomorrow, if I could.  And
23   then I am going to be here on Monday, as I told your clerk.
24   I could have a matter at 9:00 o'clock before Judge Walter,
25   but I will be here right after that.
```

```
 1              THE COURT:  All right.  Seems like the Government
 2   knows what its argument is going to be anyway.  So we will
 3   add that to the morning calendar.  The afternoon we have
 4   that TRO.  All right.
 5              Put that on, then, for 10:00 o'clock if it's
 6   properly noticed.
 7              Anything else from either side?  Miss Scott?
 8              MS. SCOTT:  Nothing from the Government,
 9   Your Honor.  Thank you.
10              THE COURT:  Thank you.
11              MR. NAVARRO:  Thank you, Your Honor.
12              THE COURT:  Mr. Navarro.  All right.  Thank you
13   all.
14              THE CLERK:  Court is adjourned.
15
16       (Proceedings concluded at 10:19 a.m.)
17                           --oOo--
18
19
20
21
22
23
24
25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1                          CERTIFICATE

 2

 3       I hereby certify that pursuant to Section 753,

 4   Title 28, United States Code, the foregoing is a true and

 5   correct transcript of the stenographically reported

 6   proceedings held in the above-entitled matter and that the

 7   transcript page format is in conformance with the

 8   regulations of the Judicial Conference of the United States.

 9

10   Date:  December 3, 2015.

11

12

13

14                       /S/ CHIA MEI JUI  _____

15                      Chia Mei Jui, CSR No. 3287

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA