1

2                           UNITED STATES DISTRICT COURT

3                          CENTRAL DISTRICT OF CALIFORNIA
                                 WESTERN DIVISION

4

5
     UNITED STATES OF AMERICA,      )
6                                   )
                                    )
7            PLAINTIFF,             )
                                    )
8            V.                     )
                                    )
9                                   )
     ISMAEL GUTIERREZ VILAVAZO,     )
10                                  )  CR 14-00209-TJH
                                    )
11           DEFENDANT.             )
                                    )  JANUARY 22, 2015
12                                  )  (9:34 A.M. TO 10:02 A.M.)

13
                              BAIL REVIEW HEARING
14              BEFORE THE HONORABLE JACQUELINE CHOOLJIAN
                      UNITED STATES MAGISTRATE JUDGE
15

16

17
     APPEARANCES:              SEE NEXT PAGE
18
     COURT REPORTER:           RECORDED; COURT SMART
19
     COURTROOM DEPUTY:         HANA RASHAD
20
     TRANSCRIBER:              DOROTHY BABYKIN
21                             COURTHOUSE SERVICES
                               1218 VALEBROOK PLACE
22                             GLENDORA, CALIFORNIA  91740
                               (626) 963-0566
23

24

25   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
     TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

2

```
 1   APPEARANCES:  (CONTINUED)
     FOR THE PLAINTIFF UNITED STATES OF AMERICA:
 2
         STEPHANIE YONEKURA, ACTING
 3       UNITED STATES ATTORNEY
         ROBERT DUGDALE
 4       CHIEF, CRIMINAL DIVISION
         ASSISTANT UNITED STATES ATTORNEY
 5       BY:  MICHAEL O. AZAT
             CHRISTOPHER GRIGG
 6             KIMBERLY DENISE JAIMEZ
         312 NORTH SPRING STREET
 7       12TH FLOOR
         LOS ANGELES, CALIFORNIA  90012
 8

 9   FOR THE DEFENDANT ISMAEL GUTIERREZ VILAVAZO:

10       ANGEL NAVARRO LAW OFFICE
         BY:  ANGEL NAVARRO
11             ATTORNEY AT LAW
         714 WEST OLYMPIC BOULEVARD
12       SUITE 450
         LOS ANGELES, CALIFORNIA  90015
13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1                          I N D E X

2   CASE NO. CR 14-00209-TJH                    JANUARY 22, 2015

3   PROCEEDINGS:   BAIL REVIEW HEARING

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

```
1    LOS ANGELES, CALIFORNIA; THURSDAY, JANUARY 22, 2015; 9:34 A.M.

2              THE CLERK:  PLEASE BE SEATED.

3              CALLING CASE CR 14-209, UNITED STATES OF AMERICA

4    VERSUS ISMAEL GUTIERREZ VILAVAZO.

5              COUNSEL, STATE YOUR APPEARANCES, PLEASE.

6              MR. AZAT:  GOOD MORNING, YOUR HONOR.

7              MICHAEL AZAT FOR THE UNITED STATES.

8              PRESENT WITH ME AT COUNSEL TABLE IS KIM JAIMEZ AS

9    CO-COUNSEL AND ALSO CHRISTOPHER GRIGG, ASSISTANT UNITED STATES

10   ATTORNEY.

11             THE COURT:  GOOD MORNING.

12             MR. NAVARRO:  AND GOOD MORNING, YOUR HONOR.

13             ANGEL NAVARRO, PRESENT WITH MR. GUTIERREZ.  HE IS

14   SEATED TO MY RIGHT.

15             THE COURT:  ALL RIGHT.  GOOD MORNING TO YOU AS WELL.

16             THIS MATTER IS ON FOR A BAIL RECONSIDERATION.

17             THE COURT HAS BEFORE IT THE DEFENSE APPLICATION AND

18   HAS CONSIDERED THAT APPLICATION AS WELL AS THE PRIOR ORDER THAT

19   IT ISSUED -- IT HAS REVIEWED AS WELL AS THE UNDERLYING

20   COMPLAINT AND INDICTMENT -- LATE YESTERDAY AND DIDN'T HAVE A

21   CHANCE TO REVIEW TILL FIRST THING THIS MORNING.

22             RECEIVED THE GOVERNMENT'S EX PARTE APPLICATION AND

23   OPPOSITION -- TO FILE THE OPPOSITION UNDER SEAL WHICH APPEARS

24   TO BE UNOPPOSED.

25             LET ME INQUIRE OF GOVERNMENT COUNSEL.
```

1              FIRST, LET ME ASK THE CLERK TO RETURN THE ORIGINAL TO

2    GOVERNMENT COUNSEL AND ASK THEM TO SIGN IT BECAUSE IT'S

3    CURRENTLY UNSIGNED.

4              AND, SECOND, WHILE YOU'RE DOING THAT, WHY DON'T YOU

5    REVIEW THAT AND TELL ME -- I'M INCLINED TO GRANT THE EX PARTE

6    AS TO THE OPPOSITION ITSELF.  BUT I DON'T SEE WHY THE EX PARTE

7    APPLICATION ITSELF, THAT DECLARATION, THERE'S NOTHING IN THERE

8    THAT STRIKES ME AS NEEDING TO BE UNDER SEAL.  SO, I WANT YOU TO

9    LOOK AT THAT REAL QUICK AND TELL ME YOUR POSITION.

10              (PAUSE IN PROCEEDINGS.)

11              MR. AZAT:  THAT'S FINE, YOUR HONOR.

12              THE COURT:  OKAY.

13              MR. AZAT:  THANK YOU.

14              THE COURT:  SO, DEFENSE, YOU WANT TO BE HEARD ON

15    THAT?

16              MR. NAVARRO:  NO, YOUR HONOR.

17              THE COURT:  NO?  OKAY.

18              SO, I'M GRANTING IN PART AND DENYING IN PART THE

19    EX PARTE APPLICATION TO SEAL.  SO, I'M SEALING THE OPPOSITION

20    BUT NOT THE EX PARTE APPLICATION AND SUPPORTING DECLARATION

21    ITSELF.  SO, I HAVE THEN REVIEWED THE OPPOSITION AS WELL AND

22    HAVE THAT BEFORE ME.

23              I HAVE ALSO RECEIVED THE UPDATED PRETRIAL SERVICES

24    REPORT WHICH ATTACHES THE ORIGINAL REPORT.  I THINK COUNSEL

25    HAVE THAT.  BUT LET ME JUST CONFIRM.

```
 1              GOVERNMENT.

 2              MR. AZAT:  YES, YOUR HONOR.

 3              THE COURT:  DEFENSE.

 4              MR. NAVARRO:  YES, YOUR HONOR.

 5              THE COURT:  ALL RIGHT.  AND EVERYBODY IS READY TO

 6   PROCEED.

 7              MR. AZAT:  YES, YOUR HONOR.

 8              MR. NAVARRO:  YES, YOUR HONOR.

 9              THE COURT:  ALL RIGHT.

10              MR. NAVARRO, IT IS YOUR MOTION.  SO, YOU CAN GO

11   FIRST.

12              MR. NAVARRO:  THANK YOU, YOUR HONOR.

13              YOUR HONOR, CAN MY CLIENT REMAIN SEATED?

14              THE COURT:  OF COURSE.

15              MR. NAVARRO:  THANK YOU.

16              GOOD MORNING, YOUR HONOR.  WHEN MR. GUTIERREZ MADE

17   HIS INITIAL APPEARANCE, YOUR HONOR, IN THIS CASE WE SUBMITTED

18   ON THE ISSUE OF BAIL.  I BELIEVE THE GOVERNMENT ATTACHED A COPY

19   OF THE TRANSCRIPT, WHICH I HAVE REVIEWED AS WELL.  AND IT'S --

20   THAT HAPPENS MANY TIMES WHEN WE APPEAR BEFORE THE COURT FOR A

21   NUMBER OF REASONS.  IN THIS CASE I WAS JUST BEING APPOINTED.  I

22   HADN'T HAD ANY CONTACT WITH THE FAMILY, ET CETERA.

23              THE COURT:  I'M NOT HOLDING IT AGAINST YOU.  SO,

24   WE'RE STARTING FROM SCRATCH HERE.

25              MR. NAVARRO:  AND I KNOW THAT, YOUR HONOR.
```

1           YOUR HONOR, I RECOGNIZE THIS IS A PRESUMPTION CASE

2     BASED ON THE NARCOTICS.  I DON'T QUESTION THAT.

3           I DO TAKE ISSUE WITH A LOT OF THE COLLATERAL

4     ARGUMENTS THAT ARE BEING MADE BY THE GOVERNMENT WITH REGARD TO

5     THE CONFIDENTIAL INFORMANT.  WE WILL HAVE OUR DAY IN COURT.

6     AND WE BELIEVE THAT THOSE ISSUES WILL BE FLUSHED OUT IN COURT

7     IN TRIAL BEFORE JUDGE HATTER.

8           BE THAT AS IT MAY, I BELIEVE THE GOVERNMENT CORRECTLY

9     POINTS OUT IN THEIR MOTION -- IN THEIR OPPOSITION TO MY MOTION

10    THAT THE WEIGHT OF THE EVIDENCE IS ONE FACTOR.  AND IT'S THE

11    FACTOR THAT YOU HAVE TO GIVE THE LEAST AMOUNT OF WEIGHT.

12          THE COURT:  CAN I INTERRUPT YOU ONE SECOND.

13          YOU JUST SAID JUDGE HATTER.  AND I LOOK AT -- AND I

14    REALIZE IT IS JUDGE HATTER.  I THOUGHT THIS WAS JUDGE GEE.

15          IT GOT TRANSFERRED AT SOME POINT?

16          MR. NAVARRO:  IT DID, YOUR HONOR.

17          THE COURT:  OKAY.

18          ALL RIGHT.  CONTINUE ON.

19          MR. NAVARRO:  ON THE EVE OF TRIAL JUDGE GEE SHE

20    TRANSFERRED IT ON HER OWN.  AND THAT'S WHY.

21          THE COURT:  AND WHEN IS THIS SET?

22          MR. NAVARRO:  IT'S NOW -- IT'S GOING TO BE SET FOR

23    APRIL NOW, YOUR HONOR.  IT WAS SUPPOSED TO BE SET FOR NEXT

24    TUESDAY, BUT JUDGE HATTER IS GOING TO MOVE IT ON HIS OWN ACCORD

25    TO APRIL --

1              THE COURT:  OKAY.

2              MR. NAVARRO:  -- WHICH IS --

3              THE COURT:  THANK YOU.

4              MR. NAVARRO:  YOUR HONOR, THERE'S A PRESUMPTION IN

5    THE CASE INVOLVING NARCOTICS, BUT WE BELIEVE IT'S A REBUTTABLE

6    PRESUMPTION THAT CAN BE OVERCOME IF YOU LOOK AT, NOT JUST THE

7    ALLEGATIONS, BUT IF YOU LOOK AT MY CLIENT AND HIS BACKGROUND,

8    THE PROPOSED BOND THAT WE ARE SUBMITTING FOR YOUR HONOR TO

9    CONSIDER, WE DO BELIEVE THAT A SECURED BOND SIGNED BY HIS

10   SISTER, YOUR HONOR -- AND THIS IS THE FAMILY HOME WHERE THE

11   ENTIRE FAMILY LIVES -- AND I'VE TALKED TO THE FAMILY.  SHE'S

12   OBVIOUSLY TALKED TO PRETRIAL SERVICES AS WELL.  WASABA

13   GUTIERREZ, SHE'S WILLING AND ABLE TO POST HER HOUSE.

14              WHEN I SUBMITTED MY CR-88 I PROPOSED $25,000 BECAUSE

15   I JUST WASN'T -- IT WAS UNCLEAR TO ME IF THERE WAS GOING TO BE

16   THAT MUCH EQUITY.  BUT, APPARENTLY, THERE IS MORE EQUITY THAN

17   THAT, WHICH IS EVEN BETTER.  I DON'T THINK THE NUMBER, TO BE

18   HONEST, IS THAT SIGNIFICANT, WHETHER IT'S 50 OR WHETHER IT'S A

19   HUNDRED.  I THINK THE EFFECT IS THE SAME, THAT IF THE PROPERTY

20   IS POSTED, AND MY CLIENT FLEES OR DOES NOT COMPLY WITH BOND,

21   THERE CAN BE SERIOUS REPERCUSSIONS TO HIS FAMILY, YOUR HONOR.

22              IN THIS CASE, YOUR HONOR, THERE WERE TWO DEFENDANTS.

23              THE FIRST IS DEFENDANT -- I DON'T KNOW IF IT WAS YOUR

24   HONOR OR SOMEBODY ELSE GRANTED HIM BAIL.  AND THAT DEFENDANT'S

25   CASE WAS DISMISSED BY THE GOVERNMENT APPARENTLY BECAUSE THE

1  INFORMANT MISIDENTIFIED HIM MULTIPLE TIME.

2           THE COURT:  THAT WAS THE -- WELL, MR. HUERTA?

3           MR. NAVARRO:  MR. HUERTA.

4           THAT'S ONE FACTOR, YOUR HONOR.

5           YOU HAVE SOMEONE, YOUR HONOR, WHO HAS BEEN IN THIS

6  COUNTRY, MY CLIENT, PRETTY MUCH HIS ENTIRE LIFE.  HE WAS BORN

7  IN MEXICO, BUT HE'S BEEN HERE SINCE HE WAS ONE YEAR'S OLD.  HE

8  WAS SCHOOLED HERE.  HE HAS A RELATIVELY MINOR CRIMINAL HISTORY.

9  HE'S NOT A DRUG USER.

10          WE BELIEVE THAT THE PROPOSED BOND IS MORE THAN

11  SUFFICIENT TO MITIGATE REALLY THE ISSUE OF FLIGHT.  WE DON'T --

12  WE DON'T BELIEVE MY CLIENT IS A DANGER TO THE COMMUNITY.

13          IF YOUR HONOR GRANTS HIM BAIL -- AND WE ARE PROPOSING

14  A BOND NOT ONLY OF PROPERTY, BUT I WOULD ACTUALLY SUGGEST TO

15  THE COURT ELECTRONIC MONITORING AS WELL IN THIS CASE.  WE'RE

16  NOT OPPOSED TO THAT.  I THINK THAT THAT WILL BE -- THAT WILL

17  MAKE SENSE IN A CASE LIKE THIS.

18          MY CLIENT HAS BEEN IN CUSTODY NOW FOR ALMOST A YEAR.

19  AND IN LIGHT OF THE MOST RECENT CONTINUANCE BY THE COURT BY

20  JUDGE HATTER WE THINK THAT BAIL IS APPROPRIATE IN THIS CASE,

21  YOUR HONOR.

22          WE DO SUBMIT THAT THE PROPOSED SURETY IS MORE THAN

23  SUFFICIENT TO REBUT THE PRESUMPTION.

24          THE GOVERNMENT HAS CONCERNS ABOUT THE INFORMANT.  AND

25  I -- I CAN'T LITIGATE THE OTHER --

1          THE COURT:  LET ME JUST SAY TO -- I MEAN, YOU'RE

2     WELCOME TO ADDRESS THAT, BUT LET ME JUST SAY THAT THE CONCERNS

3     OF THE INFORMANT RELATIVE TO HIS OWN SAFETY AND THE SUSPICIONS

4     REGARDING THIS DEFENDANT BEING -- THE SUSPICIONS REGARDING THAT

5     OTHER MATTER INVOLVING A MR. HERNANDEZ, THOSE ARE JUST

6     INSUFFICIENTLY CONCRETE FOR ME TO REALLY FEEL LIKE THOSE WEIGH

7     AGAINST BAIL IN THE CASE.  SO, I'M NOT REALLY PUTTING A LOT OF

8     -- WELL, I'M NOT REALLY PUTTING ANY WEIGHT, SO TO SPEAK, ON

9     THOSE THINGS, OR, AT LEAST, THEY'RE NOT SWAYING ME ONE WAY OR

10    THE OTHER.  OKAY.

11         SO, YOU'RE AGAIN WELCOME TO ADDRESS THEM FOR THE

12    RECORD, BUT I THINK I ANTICIPATE WHAT YOUR ARGUMENT IS.  AND I

13    THINK I AGREE WITH IT, THAT THERE'S JUST NOT ENOUGH THERE AT

14    THIS POINT FOR THAT TO BE A FACTOR IN THE BOND CALCULUS.

15         MR. NAVARRO:  THANK YOU, YOUR HONOR.  THEN I'LL MOVE

16    ON.

17         SO, YOUR HONOR, AGAIN, I WANT TO REITERATE TO YOU

18    THAT WE'RE PROPOSING A SECURED BOND OF SUBSTANTIAL EQUITY OF

19    THE FAMILY'S ONLY ASSET.  WE ARE PROPOSING ELECTRONIC

20    MONITORING.

21         THERE IS THE -- THERE IS THE IMMIGRATION ISSUE, WHICH

22    MY CLIENT IS AWARE OF.  AND I'VE ADVISED HIM MULTIPLE TIMES.

23    AND I'VE ADVISED HIS FAMILY THAT IF WE -- IF THE COURT WERE TO

24    GRANT BAIL, HE'S VERY LIKELY THEN GOING TO GO INTO ICE CUSTODY.

25    AND I TOLD HIM I COULD NOT HELP HIM WITH THAT MATTER.  I'M NOT

1   AN IMMIGRATION LAWYER.  AND MY CLIENT IS AWARE OF THIS.  AND I

2   BELIEVE HIS FAMILY IS WILLING AND ABLE TO TAKE THAT MATTER.

3   BUT THAT'S A SEPARATE STEP FROM THE BAIL IN THIS CASE, YOUR

4   HONOR.

5           AND WE DO BELIEVE, AGAIN, YOUR HONOR, THAT A BOND CAN

6   BE SET BY THIS COURT.  AND WE WOULD ASK YOU TO SET A FULLY

7   SECURED BOND OF -- I WILL RECOMMEND $100,000 TO BE POSTED BY

8   THE PROPERTY, ALSO SIGNED BY MY CLIENT'S SISTER.

9           IF YOUR HONOR WANTED ADDITIONAL SURETIES, I WOULD

10  HAVE TO TALK TO THE FAMILY.  I HAVEN'T TALKED TO OTHER FAMILY

11  MEMBERS.  I KNOW MY CLIENT'S MOTHER IS -- SHE STAYS AT HOME.

12  SHE'S ELDERLY.  I DON'T THINK SHE'S A VIABLE SURETY, YOUR

13  HONOR.  AND THERE ARE -- THERE ARE OTHER FAMILY MEMBERS WHO

14  WORK.  I COULD POTENTIALLY TALK TO THEM AS WELL.  BUT I CAN'T

15  PROPOSE THEM SINCE I HAVE NOT TALKED TO THEM.  BUT I DO BELIEVE

16  THAT THE HOME IS MORE THAN ENOUGH.

17          AND, AGAIN, WE WOULD BE -- WE WOULD AGREE TO

18  ELECTRONIC MONITORING AS WELL, YOUR HONOR.

19          THANK YOU.

20          THE COURT:  THANK YOU, MR. NAVARRO.

21          ALL RIGHT.  COUNSEL, YOUR RESPONSE.

22          MR. AZAT:  GOOD MORNING, YOUR HONOR.

23          THE UNITED STATES IS REQUESTING DETENTION.

24          THE COURT:  CAN I ASK YOU TO PULL THAT MIC UP.

25  WE'RE USED TO HAVING PEOPLE MORE VERTICALLY CHALLENGED THAN

1    YOU.  SO, THAT MIC IS WAY LOWER THAN NECESSARY FOR YOU.

2              MR. AZAT:  CERTAINLY, YOUR HONOR.

3              THE UNITED STATES WOULD PROFFER THE INDICTMENT IN

4    THIS MATTER, THE COURT'S EARLIER FINDING OF DETENTION, AND ALSO

5    THE EXHIBITS SUBMITTED IN SUPPORT OF THE GOVERNMENT'S

6    OPPOSITION TO THE DEFENDANT'S REQUEST.

7              I'D LIKE TO START WITH, FIRST, FLIGHT, YOUR HONOR,

8    WHICH THE GOVERNMENT NEEDS TO SHOW BY A PREPONDERANCE OF THE

9    EVIDENCE.  BUT IN THIS CASE BECAUSE IT IS A PRESUMPTION CASE IT

10   IS THE DEFENDANT'S BURDEN TO REBUT THAT PRESUMPTION.

11             LOOKING AT THE PRETRIAL SERVICES REPORT, WHICH THE

12   GOVERNMENT WOULD ALSO PROFFER, ON PAGE 3 IT INDICATES THAT THE

13   DEFENDANT DOES TRAVEL SIGNIFICANTLY -- NOT NECESSARILY TO

14   MEXICO BUT THROUGHOUT THE UNITED STATES.

15             THE GOVERNMENT IS NOT AS MUCH WORRIED ABOUT WHETHER

16   OR NOT THE DEFENDANT MAY OR MAY NOT FLEE TO MEXICO.  IF HE DOES

17   GO TO ICE CUSTODY, HE MAY BE DEPORTED.  HOWEVER, HE HAS SHOWN A

18   PAST OF TRAVELING SIGNIFICANTLY WITHIN THE UNITED STATES TO

19   PLACES SUCH AS TENNESSEE, TO ARKANSAS, TO LOUISIANA.  THAT

20   TRAVEL VERY WELL COULD BE AN INDICATION THAT THE DEFENDANT

21   WOULD NOT MAKE FUTURE COURT APPEARANCES.  HE VERY EASILY COULD

22   DISAPPEAR WITHIN THE UNITED STATES AND AVOID DETECTION AS HE

23   HAS DONE FOR A VERY LONG TIME AS THE GOVERNMENT BELIEVES HE IS

24   A SIGNIFICANT DRUG TRAFFICKER AND HAS AVOIDED DETECTION TO THIS

25   POINT.

13

1              AS FAR AS THE SURETY BEING OFFERED ON THE OXNARD

2    ADDRESS, YOUR HONOR, THERE IS A HUNDRED THOUSAND DOLLARS OF

3    EQUITY THAT'S REPRESENTED TO THE COURT IN THAT HOUSE.  HOWEVER,

4    BOND IS INCONSEQUENTIAL BECAUSE DEFENDANT IS A DRUG TRAFFICKER

5    AND VERY WELL MAY HAVE THE ASSETS TO MEET ANY BOND THE COURT

6    ORDERS.

7              THE RISK OF NONAPPEARANCE FAR OUTWEIGHS ANY SURETY

8    THE DEFENDANT OR HIS FAMILY OR HIS DEFENSE COUNSEL COULD THINK

9    UP TO OFFER TO THE COURT.

10             I ALSO, YOUR HONOR, WOULD LIKE TO TOUCH UPON THE

11   DEFENSE'S UTTER FAILURE TO OFFER ANYTHING TO OVERCOME THE

12   PRESUMPTION OF DANGER.  THE STANDARD IS LOW, BUT IT HAS TO BE

13   MORE THAN NOTHING TO OVERCOME THAT, YOUR HONOR.  AND THAT'S

14   EXACTLY WHAT DEFENSE COUNSEL HAS OFFERED.

15             FIRST, THE CHARGES IN THIS CASE ARE SERIOUS -- OVER 2

16   OUNCES OF METHAMPHETAMINE BEING DISTRIBUTED BY WHAT HAS BEEN

17   INVESTIGATED BY NUMEROUS AGENCIES, INCLUDING LOS ANGELES POLICE

18   DEPARTMENT, THE DEA, THE FBI, AS A SERIOUS DRUG TRAFFICKER IS A

19   SERIOUS OFFENSE FACING VERY STRICT CONSEQUENCES.

20             IN ADDITION TO THAT, YOUR HONOR, DEFENDANT WAS

21   INVESTIGATED FOR THE MURDER OF NESTER HERNANDEZ.  NOW, TAKEN AS

22   ITS OWN, I UNDERSTAND THE COURT BEARS LITTLE WEIGHT ON THAT.

23   HOWEVER, THERE IS SOLID EVIDENCE THAT ATTACHES DEFENDANT TO

24   THAT INDIVIDUAL.  THEY OWNED A RANGE ROVER THAT WAS REGISTERED

25   TO EACH OTHER.  AND IN THAT RANGE ROVER THERE WAS DRUGS FOUND

1    IN THE RANGE ROVER.  SO, IF YOU DON'T WANT TO TAKE THE C.S.'S

2    STATEMENTS ALONE --

3              THE COURT:  DRUGS OR DRUG TRACES?

4              MR. AZAT:  DRUG TRACES, YOUR HONOR.  BUT TRACES

5    INDICATING THE SALE OF NARCOTICS.

6              SO, IF THE COURT DOES NOT WANT TO TAKE THE C.S.'S

7    STATEMENTS AS ALONE, THOSE STATEMENTS ARE CORROBORATED WITH

8    EVIDENCE.

9              THE COURT:  HOW DOES THAT CORROBORATE THE CONCERNS

10   REGARDING THE SUSPECTED MURDER?

11             I UNDERSTAND THAT IT CORROBORATES AT LEAST TO SOME

12   DEGREE THE CHARGES THAT ARE CURRENTLY PENDING.  BUT I'M NOT

13   SURE -- IT SOUNDS LIKE YOU'RE ARGUING IT FOR SOMETHING BEYOND

14   THAT.

15             MR. AZAT:  WELL, I'M ARGUING IT FOR TWO REASONS.

16             ONE, YOUR HONOR, THE CHARGES, WHICH ARE SUPPORTED BY

17   A SUBSTANTIAL AMOUNT OF EVIDENCE.

18             AND, SECONDLY, BECAUSE DEFENDANT IS SUSPECTED OF --

19   OF THE MURDER OF NESTOR HERNANDEZ.  AND THIS DOES SUPPORT THAT

20   HE WAS INVOLVED WITH NESTOR HERNANDEZ, THAT THEY BOTH WERE

21   ASSOCIATED WITH DRUG TRAFFICKING, AND THAT THE C.S.'S

22   STATEMENTS REGARDING C.S.'S -- DEFENDANT'S RELATIONSHIP WITH --

23   DEFENDANT'S RELATIONSHIP WITH NESTOR HERNANDEZ ARE

24   CORROBORATED.

25             THEY'RE ALSO CORROBORATED BY DEFENDANT'S CRIMINAL

1    HISTORY.  THE C.S. HAS PROVIDED TESTIMONY TO LAW ENFORCEMENT

2    AGENTS THAT HE HAS OBSERVED DEFENDANT HAVING ACCESS TO WEAPONS,

3    THAT HE IS AFRAID OF DEFENDANT.

4              AND I UNDERSTAND YOUR HONOR HAS SAID THAT SHE DOES

5    NOT WANT TO GIVE PARTICULAR WEIGHT TO THOSE STATEMENTS.

6    HOWEVER, IF YOU LOOK AT DEFENDANT'S CRIMINAL HISTORY, THAT

7    CRIMINAL HISTORY CORROBORATES ON PAGE 3 OF THE APRIL 2014

8    PRETRIAL SERVICES REPORT, DEFENDANT HAS A PRIOR CHARGE FOR

9    CARRYING A LOADED FIREARM.  DEFENDANT HAS A PRIOR CHARGE FOR

10   CARRYING A CONCEALED WEAPON IN A VEHICLE.

11             I THINK IF YOU COUPLE THOSE CHARGES WITH STATEMENTS

12   MADE BY A CONFIDENTIAL SOURCE WHOSE EVIDENCE -- OR WHOSE

13   STATEMENTS HAVE BEEN CORROBORATED IN THIS CASE WITH OTHER

14   EVIDENCE, THAT SUPPORTS HIS STATEMENTS THAT HE HAS SEEN

15   DEFENDANT HAVE ACCESS TO AN ASSAULT RIFLE, THAT HE HAS SEEN

16   DEFENDANT ARGUE WITH NESTOR HERNANDEZ ABOUT DRUGS THAT NESTOR

17   LOST THAT BELONGED TO DEFENDANT, THAT THE CONFIDENTIAL SOURCE

18   WENT ON A HUNTING TRIP WITH DEFENDANT.  AND AT THAT POINT HE

19   ALSO HAD ACCESS TO AN A.R.-15 ASSAULT RIFLE, WHICH IS

20   ESSENTIALLY AN M-16.

21             THAT IN ITSELF, YOUR HONOR, SHOWS THAT THERE IS A

22   SIGNIFICANT DANGER TO THE COMMUNITY POSED BY THE DEFENDANT.

23             AND IF DEFENSE COUNSEL CAN OFFER NOTHING TO REBUT

24   THAT, THAT ALONE, YOUR HONOR, COUPLED WITH HIS FLIGHT RISK

25   SHOULD BE ENOUGH FOR THE COURT TO ORDER DETENTION, YOUR HONOR.

1           THANK YOU.

2           THE COURT:  ALL RIGHT.

3           MR. NAVARRO, DO YOU WANT TO RESPOND?

4           MR. NAVARRO:  BRIEFLY, YOUR HONOR.

5           I'LL BRING THIS BACK DOWN.  I'M SORRY.

6           THE COURT:  THANK YOU.

7           MR. NAVARRO:  YOUR HONOR, IT'S -- AND I'VE SAID THIS

8   BEFORE -- MAYBE TO OTHER JUDGES, MAYBE TO YOURSELF AS WELL --

9   WHENEVER WE'RE LOOKING -- WHENEVER A JUDGE OR -- I THINK -- IS

10  HAVING TO MAKE A DECISION ON WHETHER TO RELEASE SOMEONE ON

11  BAIL.  YOU'RE MAKING -- YOU'RE MAKING A JUDGMENT CALL.  BUT AT

12  THE SAME TIME I'M SURE YOU HAVE EXPERIENCE BOTH AS A PROSECUTOR

13  AND AS A JUDICIAL OFFICER OF WHAT HAPPENS WHEN PEOPLE ARE

14  RELEASED ON BAIL.

15          MY EXPERIENCE HAS BEEN -- AND IT'S NOT AS LONG AS

16  YOURS, BUT IT'S PRETTY LONG -- PEOPLE SHOW UP.  I REMEMBER

17  ATTENDING THE SERVICES OF JUDGE BROWN.  YOU WERE BEFORE JUDGE

18  BROWN MANY TIMES, VOLNEY BROWN.  AND I REMEMBER TALKING TO HIS

19  SON.  AND HIS SON MENTIONED THAT, YOU KNOW, JUDGE BROWN

20  RELEASED A LOT OF PEOPLE ON BAIL.  AND HE KEPT HIS OWN STATS.

21  AND THOSE STATS REFLECTED THAT PEOPLE SHOW UP.  MY STATS ARE

22  THE SAME WAY.  I THINK IN 23 YEARS I'VE HAD MAYBE ONE OR TWO

23  PEOPLE WHO ABSCONDED ON BAIL.

24          SO, WE BRING IN OUR EXPERIENCES, YOUR HONOR, OUR

25  BACKGROUND WHEN WE ARGUE FOR BAIL BEFORE JUDGES.  AND THERE'S

1   NO -- THERE'S NO GUARANTEE.  THERE ARE NO GUARANTEES.  THE ONLY

2   GUARANTEE IS IF MY CLIENT REMAINS IN CUSTODY.  THAT'S THE ONLY

3   WAY HE WILL SHOW UP FOR SURE TO COURT.  WE KNOW THAT.

4           BUT WE ALSO KNOW THAT PEOPLE GET RELEASED ON BAIL ALL

5   THE TIME -- MAYBE NOT AS MUCH IN THIS DISTRICT AS IN OTHER

6   DISTRICTS.  BUT PEOPLE GET RELEASED ON BAIL.  AND MY EXPERIENCE

7   HAS BEEN THAT PEOPLE SHOW UP.

8           WHEN -- WHEN THE PERSON IS GRANTED BAIL, YOUR HONOR,

9   IT BECOMES THE RESPONSIBILITY TYPICALLY NOT JUST OF THE

10  DEFENDANT BUT ALSO OF THE FAMILY.

11          AND I REALLY EMPHASIZE THE FAMILY IN THIS CASE

12  BECAUSE IT'S ALL HIS SIBLINGS LIVE IN THIS COUNTRY.  HIS MOTHER

13  LIVES IN THIS COUNTRY.  HE'S NOT GOING TO BE RELEASED AND TAKE

14  OFF TO MEXICO AND BECOME SOME KIND OF A DRUG -- SOME KIND OF, I

15  GUESS, A DRUGPIN OR SOMETHING -- KINGPIN.  IF HE DOES ANYTHING

16  LIKE THAT, HE WILL RUIN HIS FAMILY.  AND THERE'S NO -- I

17  HAVEN'T SEEN -- THE GOVERNMENT IS MAKING ARGUMENTS THAT MY

18  CLIENT IS A NARCOTICS TRAFFICKER.  AND HE TRAFFICS IN WEAPONS.

19  AND I CAN'T DISPROVE THOSE ALLEGATIONS AT THIS POINT.

20          BUT I DO KNOW THAT, FOR EXAMPLE, WHEN THE SEARCH

21  WARRANT WAS SERVED, AND THERE WERE -- THERE WERE TRACES OF

22  NARCOTICS FOUND IN THE VEHICLE THAT WAS REGISTERED TO BOTH MY

23  CLIENT AND NESTOR HERNANDEZ, MY CLIENT WAS IN CUSTODY I BELIEVE

24  IN TENNESSEE.  THIS WAS MONTHS AFTER THE ALLEGED TRANSACTION

25  WITH THE INFORMANT.  AND WHETHER -- WHETHER A JURY GIVES ANY

1   CREDENCE OR ANY WEIGHT TO THAT EVIDENCE IS TO BE DETERMINED.

2              JUDGE HATTER HAS DETERMINED THAT THAT'S GOING TO COME

3   IN.  AND I UNDERSTAND.

4              THE COURT:  I'M SORRY?  WHAT'S THAT?

5              MR. NAVARRO:  WHETHER OR NOT --

6              THE COURT:  WHAT HAS HE DETERMINED THAT'S COMING IN

7   AT TRIAL?  I'M --

8              MR. NAVARRO:  JUDGE HATTER --

9              THE COURT:  -- NOT SURE.

10             MR. NAVARRO:  JUDGE HATTER HAS DETERMINED OVER MY

11  OBJECTION THAT THAT EVIDENCE THAT WAS SEIZED AT THE -- AT THAT

12  PROPERTY CAN COME IN.

13             THE COURT:  OKAY.

14             MR. NAVARRO:  BUT, OF COURSE, I GET TO ARGUE AGAINST

15  IT.

16             BUT TO ME THAT'S REALLY A WEAK LINK.  IT'S A -- THESE

17  ARE ALLEGATIONS.  THERE'S AT LEAST ONE OTHER PERSON WHO OWNED

18  THE VEHICLE.  I DON'T -- I HAVEN'T SEEN ANY EVIDENCE THAT, YOU

19  KNOW, MY CLIENT'S FINGERPRINTS WERE ON THE NARCOTICS, ET

20  CETERA.

21             AND, YOU KNOW, AND IT IS TRUE MR. HERNANDEZ WAS

22  KILLED.  I UNDERSTAND.  AND -- BUT THE DISCOVERY THAT THE

23  GOVERNMENT HAS GIVEN ME HAS INDICATED THAT THERE'S OTHER PEOPLE

24  WHO THE GOVERNMENT -- OR WHO ARE -- I GUESS ARE BELIEVED TO

25  HAVE BEEN INVOLVED OR EVEN BEEN THE SHOOTERS.  NOT MY CLIENT.

1          THE COURT:  WELL, SUFFICE TO SAY NOBODY HAS BEEN

2     ARRESTED OR CHARGED IN THAT CASE.  SO --

3          MR. NAVARRO:  THAT'S CORRECT.  AND MY CLIENT HAS NOT.

4          AND AS I'VE TOLD MY CLIENT, AND I'LL TELL YOU, IF THE

5     DISTRICT ATTORNEY DECIDES TO FILE CHARGES, THEY WILL.  AND

6     NEITHER I OR YOU OR ANYBODY ELSE CAN DO ANYTHING ABOUT IT.  IT

7     IS WHAT IT IS.  BUT AS OF TODAY HE HASN'T BEEN CHARGED IN THOSE

8     -- FOR THAT CRIME, YOUR HONOR.

9          AND WE DO BELIEVE THAT IF HE -- IF HE IS GRANTED

10    BAIL, AND THE GOVERNMENT HAS CONCERNS ABOUT -- YOU KNOW, ABOUT

11    HIS TRAVELS EVEN WITHIN THE COUNTRY, AGAIN, THERE'S -- THE

12    COURT CAN SET RESTRICTIONS.  THE COURT CAN EVEN SET A CURFEW.

13         YOU CAN HAVE HIM HERE AT HOME ONLY WORKING AND

14    MEETING WITH ME AND GOING TO CHURCH, ET CETERA.

15         AND IF MY CLIENT WERE FOOLISH ENOUGH TO CUT THAT

16    ANKLE MONITOR, THE FIRST THING THAT WOULD HAPPEN IS THE

17    MARSHALS WOULD GO GET HIM.  AND --

18         THE COURT:  IF THEY COULD FIND HIM.

19         MR. NAVARRO:  OF COURSE.  I MEAN, THAT'S ALWAYS THE

20    -- THAT'S ALWAYS THE RISK THAT -- A PERSON CAN GET LOST.  OF

21    COURSE, THEY CAN -- IN THIS COUNTRY OR ELSEWHERE.

22         BUT, AGAIN, I GO BACK TO THE POINT THAT IF MY CLIENT

23    IS GRANTED BOND -- NOT ONLY BY YOUR HONOR BUT ALSO BY

24    IMMIGRATION COURT, I BELIEVE THAT IF HE -- IF HE GOES TO

25    IMMIGRATION COURT THEY DON'T -- THEY DON'T DEPORT YOU.  THEY

1    HOLD YOU.  AND THEN IF YOU CAN GET OUT OF ICE CUSTODY, YOU DO

2    IT.  NOT -- THEN, I HAVE TO -- I HAVE TO EXONERATE MY BOND AND

3    GET HIM BACK.  THEY DON'T JUST DEPORT PEOPLE.  THEY -- THEY'RE

4    -- YOU KNOW, IT'S A BRANCH OF THE GOVERNMENT.  THEY DON'T --

5    THEY DON'T --

6              THE COURT:  IT'S A MYSTERY.

7              MR. NAVARRO:  YEAH.  THEY DON'T -- THEY DON'T DO THAT

8    -- I'VE HAD EXPERIENCES WHERE MY CLIENTS ARE STUCK THERE FOR

9    MONTHS AND WE'VE GOT TO GET THEM BACK.  BUT IT HAPPENS.

10             BUT THE POINT IS IF MY CLIENT IS GRANTED BOND, HE IS

11   GOING TO SHOW UP.  HE IS GOING TO BE WITH HIS FAMILY.  AND WE

12   BELIEVE THAT -- THE ONE FINANCIAL ASSET THAT THE FAMILY HAS

13   THEY'RE WILLING TO POST.  AND I BELIEVE THAT'S SIGNIFICANT FOR

14   BOND IN THIS CASE, YOUR HONOR.

15             THE COURT:  CAN I ASK YOU TO ADDRESS THE DANGER ISSUE

16   THOUGH.  BECAUSE EVERYTHING YOU'VE SAID REALLY PERTAINS TO

17   FLIGHT.  BUT IT IS A PRESUMPTION CASE AS GOVERNMENT COUNSEL HAS

18   NOTED.  AND THERE IS, ASIDE FROM THAT PRESUMPTION, SOME CAUSE

19   FOR CONCERN RELATIVE TO DANGER, SEPARATE AND APART FROM THE

20   ALLEGED MURDER AND THE C.I.'S CONCERNS, THE CRIMINAL HISTORY,

21   THE NATURE OF THE ALLEGATIONS HERE AND, PROBABLY MOST

22   SIGNIFICANTLY, THE WEAPONS ISSUE.

23             SO, IF YOU WANT TO ADDRESS THOSE.

24             MR. NAVARRO:  YOUR HONOR, YOU ARE CORRECT.  AND I

25   WOULD ACTUALLY GO -- I WOULD ACTUALLY GO A STEP FURTHER.  I

1   THINK THAT WHEN THERE'S AN ALLEGATION OF A MURDER, YOU CAN SAY

2   I'M NOT GOING TO CONSIDER IT, BUT YOU KIND OF HAVE TO IN A

3   SENSE.  BECAUSE IT'S NOT EVERY DEFENDANT THAT COMES BEFORE YOU

4   THAT HAS AN ALLEGATION OF A MURDER.

5          THE COURT:  BUT -- I UNDERSTAND THAT, BUT LET ME JUST

6   SAY THAT'S NOT SOMETHING I -- THERE'S JUST NOT ENOUGH.  WHAT

7   THE RECORD SHOWS IS THAT HE WAS ASSOCIATED WITH THE GUY.  THEY

8   WERE ALLEGEDLY INVOLVED IN SOME TYPE OF DRUG DEALING TOGETHER.

9   THERE WAS SOME ISSUE REGARDING MISSING DRUGS.  AND AFTER

10  MR. HERNANDEZ WAS KILLED, THERE WAS A LACK OF EMOTIONAL

11  RESPONSE SHORTLY AFTER.

12         IF THAT WAS ENOUGH TO CHARGE SOMEBODY WITH MURDER,

13  HE'D ALREADY BE CHARGED WITH MURDER.  BUT IT'S NOT, SO.

14         LOOK, I HEAR WHAT YOU'RE SAYING.  I JUST DON'T SEE

15  THAT WHAT'S BEFORE ME IS -- IT'S NOT SUFFICIENT TO ARREST HIM.

16  SO, I EVEN GIVE NOT SO MUCH WEIGHT TO ARREST.  THE SPECULATION

17  SWIRLING AROUND TO ME IS, AGAIN, NOT SOMETHING THAT TIPS THE

18  BALANCE IN ANY WAY.

19         MR. NAVARRO:  AND, YOUR HONOR, I THANK YOU.

20         WHENEVER SOMEONE IS INDICTED FOR NARCOTICS

21  TRAFFICKING AND THEY HAVE A PRIOR CONVICTION FOR A WEAPONS

22  CHARGE, THOSE ARE -- THOSE TWO THINGS ARE CAUSE OF CONCERN.

23         THE COURT:  WELL, AND THAT'S WHAT WE HAVE HERE.

24  THAT'S WHY --

25         MR. NAVARRO:  RIGHT.

1          THE COURT:  -- I'M SETTING THE MURDER ASIDE, BUT

2     THERE ARE WEAPONS PRIORS, ALBEIT MISDEMEANOR.

3          MR. NAVARRO:  AND I DO BELIEVE, YOUR HONOR, THAT THE

4     ISSUES OF -- THE ISSUES -- THE CONCERNS THAT THE COURT MAY HAVE

5     AND THE GOVERNMENT HAS RIGHTLY WITH REGARD TO THE FIREARMS

6     CONVICTION AND ALSO THE CURRENT CHARGES, WE BELIEVE THAT IF YOU

7     GRANT MY CLIENT BOND, AND IF HE'S HOME, HE'S SUBJECT TO A

8     SEARCH, HE'S SUBJECT TO CONDITIONS OF PRETRIAL THAT -- YOU CAN

9     NEVER MITIGATE THAT A HUNDRED PERCENT.  I MEAN, IF SOMEONE

10    WANTS TO BE FOOLISH ENOUGH TO GET A WEAPON, THEY'LL DO SO.

11         BUT THE REALITY IS THIS.  IF YOU GRANT MY CLIENT

12    BOND, HE'S GOING TO BE HOME.  HE'S GOING TO BE SUPERVISED BY

13    PRETRIAL SERVICES.  WE WOULD THINK THAT IT WILL BE INTENSIVE

14    PRETRIAL SUPERVISION SUBJECT TO SEARCHES.

15         THERE'S NOT A WHOLE LOT ELSE WE CAN DO.  I MEAN,

16    ASIDE FROM HAVING SOMEONE WITH HIM 24/7 WHICH IS REALLY NOT A

17     -- SOMETHING THAT WE SHOULD BE DOING.  AND I THINK AT THAT

18    POINT YOU HAVE TO MAKE A JUDGMENT WHETHER IN YOUR OPINION THE

19    BOND IS ENOUGH TO MITIGATE THE ISSUE OF NOT JUST -- NOT JUST

20    FLIGHT BUT ALSO THE DANGER THAT MY CLIENT MAY POSE TO OTHERS IN

21    THE COMMUNITY.

22         I SUBMIT TO YOU THAT ALTHOUGH HIS FAMILY LOVES HIM,

23    THEY WOULD NOT BE SO WILLING TO ASSIST HIM IF THEY FELT THAT HE

24    WAS GOING TO BE HARMING ANYBODY IF HE WAS RELEASED FROM

25    CUSTODY, IF HE WAS GOING TO BE FLEEING.

1           AND, AGAIN, THAT'S THE PARENTS IN THEM.  BUT IT'S

2     REALLY ALL WE HAVE, YOUR HONOR.

3           SO, I CAN'T DISPROVE IT.  I CAN'T PROVE IT.  I THINK

4     THAT YOUR HONOR HAS TO MAKE THAT CALL.  AND WE BELIEVE THAT THE

5     BOND IS SUFFICIENT TO MITIGATE THOSE ISSUES.

6           THE COURT:  OKAY.  THANK YOU, MR. NAVARRO.

7           SUBMITTED?

8           MR. NAVARRO:  YES, YOUR HONOR.

9           MR. AZAT:  IF I MAY BRIEFLY, YOUR HONOR.

10          THE COURT:  OKAY.  I'M GOING TO STILL LET HIM HAVE

11    THE LAST WORD THOUGH, BUT ALL RIGHT.

12          MR. AZAT:  I JUST WANT TO SAY TWO POINTS, YOUR HONOR.

13          ON THE FLIGHT ISSUE, PEOPLE SHOW UP UNTIL THEY DON'T.

14    AND DEFENSE COUNSEL CITED STATISTICS.  WE'VE PUT FORTH FACTS OF

15    WHY HE'S A FLIGHT RISK.  THE TRAVEL TO THE UNITED STATES, THE

16    CHARGES, IMMIGRATION STATUS IS ENOUGH TO OVERCOME THE

17    PREPONDERANCE STANDARD.

18          THE DANGER STANDARD, YOUR HONOR, DEFENSE COUNSEL SAID

19     -- WELL, QUICKLY, THERE NEEDS TO BE PROBABLE CAUSE TO ARREST.

20          THIS IS A LOWER STANDARD, YOUR HONOR.  IT IS CLEAR

21    AND CONVINCING EVIDENCE THAT DEFENSE COUNSEL HAS NOT REBUTTED.

22    INSTEAD HE SAID, WELL, YOU CAN NEVER MITIGATE THE IDEA OF HIM

23    GOING AND GETTING A GUN A HUNDRED PERCENT.  YOU CAN, YOUR

24    HONOR.  YOU CAN ORDER DETENTION.  THAT WOULD MITIGATE THE IDEA

25    OF HIM GOING AND GETTING A WEAPON A HUNDRED PERCENT.

1          THANK YOU.

2          THE COURT:  OKAY.

3          MR. NAVARRO, I PROMISED YOU THE LAST WORD.  IF YOU

4  WANTED TO SAY ANYTHING FURTHER, YOU MAY.  YOU'VE PRETTY MUCH

5  ALREADY ADDRESSED THESE THINGS.  BUT IF YOU WANT TO SAY

6  ANYTHING MORE.

7          MR. NAVARRO:  NO, YOUR HONOR.  THANK YOU.

8          THE COURT:  OKAY.

9          ALL RIGHT.  SORRY, I NOW HAVE SOMETHING IN MY EYE.

10  ONE MOMENT.

11         (BRIEF PAUSE IN PROCEEDINGS.)

12         THE COURT:  OKAY.  ALL RIGHT.  WHILE I APPRECIATE THE

13  ARGUMENTS MADE BY BOTH SIDES, AND THE FAMILY'S WILLINGNESS TO

14  POST THE EQUITY IN THEIR SOLE ASSET, A HOME IN WHICH THEY AND

15  THE DEFENDANT UNTIL HE WAS TAKEN INTO CUSTODY RESIDES, I DON'T

16  THINK A SUFFICIENT SHOWING HAS BEEN MADE TO GRANT BAIL IN THIS

17  CASE.

18         I, AGAIN, HAVE CONSIDERED EVERYTHING THE PARTIES HAVE

19  SUBMITTED, THOUGH, AGAIN, THE MURDER ALLEGATIONS -- THEY

20  HAVEN'T EVEN RISEN TO THE LEVEL OF ALLEGATIONS FRANKLY.  THE

21  MURDER SPECULATION AT THIS POINT AND THE C.I. CONCERNS

22  REGARDING SAFETY, THEY, AGAIN, DON'T TIP THE SCALE AND DON'T

23  REALLY CARRY MUCH, IF ANY, WEIGHT WITH THE COURT IN ITS

24  ASSESSMENT.

25          AS TO SAFETY, THE COURT IS FINDING BY CLEAR AND

1   CONVINCING EVIDENCE THAT NO CONDITION OR COMBINATION OF

2   CONDITIONS WILL REASONABLY ASSURE THE SAFETY OF ANY OTHER

3   PERSON IN THE COMMUNITY.

4          THAT IS BASED ON THE INSTANT OFFENSE ALLEGATIONS AND

5   THE PRIOR CRIMINAL HISTORY.  MOST SIGNIFICANTLY, ALBEIT,

6   MISDEMEANOR, THE WEAPONS ISSUES.

7          AND AS TO FLIGHT, THE COURT DOES FIND BY A

8   PREPONDERANCE OF THE EVIDENCE THAT NO CONDITION OR COMBINATION

9   OF CONDITIONS WILL REASONABLY ASSURE THE APPEARANCE OF THE

10  DEFENDANT AS REQUIRED, THOUGH THAT CERTAINLY IS A CLOSER CALL

11  IN LIGHT OF THE EQUITY IN THE HOUSE.

12         AND, AGAIN, WHILE I DON'T DOUBT THE FAMILY'S TRUST

13  AND WILLINGNESS TO SUPPORT THE DEFENDANT GIVEN THEIR

14  WILLINGNESS TO POST THE HOUSE, I'M LESS SANGUINE ABOUT THE

15  DEFENDANT'S BEING DISINCLINED TO SUBJECT HIS FAMILY TO THE

16  POSSIBILITY OF LOSING THAT PROPERTY BASED ON WHAT'S BEFORE

17  ME.

18         SO, I DO FIND A SERIOUS FLIGHT RISK BASED ON THE --

19  AGAIN, THE THINGS WE'VE DISCUSSED HERE AS WELL AS THE

20  IMMIGRATION STATUS AND THE TRAVEL HISTORY.

21         SO, THE PRESUMPTIONS, AGAIN, HAVE NOT BEEN REBUTTED.

22         I WOULD ALSO SAY THERE HAS BEEN DISCUSSION ABOUT HIS,

23  YOU KNOW, EXPERIENCE AND WHAT HAS OCCURRED WITH OTHER

24  DEFENDANTS IN OTHER KINDS OF CASES.

25         THE BOTTOM LINE IS BAIL IS ALWAYS AN INDIVIDUALIZED

1    DETERMINATION.  SO, WHILE IT'S ALL WELL AND GOOD TO TALK ABOUT

2    WHAT HAS HAPPENED IN OTHER CASES, THE COURT'S FOCUS IS ON THIS

3    CASE AND THIS DEFENDANT, AND ITS DETERMINATIONS RELY ON THE

4    SAME.

5              SO, THAT IS THE COURT'S RULING.

6              AND, OF COURSE, MR. NAVARRO, I KNOW YOU KNOW THIS,

7    BUT YOU MAY CERTAINLY APPEAL THIS DETERMINATION TO JUDGE HATTER

8    IF YOU BELIEVE THAT'S APPROPRIATE.

9              ANYTHING ELSE IN THIS MATTER AT THIS TIME?

10             MR. AZAT:  NO, YOUR HONOR.  THANK YOU.

11             MR. NAVARRO:  NO, YOUR HONOR.  THANK YOU VERY MUCH.

12             THE COURT:  THANK YOU.

13             THE CLERK:  COURT'S ADJOURNED.

14             (PROCEEDINGS CONCLUDED 10:02 A.M.)

15

16

17

18

19

20

21

22

23

24

25

27

1

2

3                       C E R T I F I C A T E

4

5           I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

6    FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE

7    ABOVE-ENTITLED MATTER.

8

9

10

11   /S/ DOROTHY BABYKIN                       12/3/15

12   _____          _____

13   FEDERALLY CERTIFIED TRANSCRIBER          DATED

14   DOROTHY BABYKIN

15

16

17

18

19

20

21

22

23

24

25